**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHEN K. HSU,
Plaintiff-Appellant,

v.

TOGO D. WEST, JR., Office of the
Secretary of the Army; UNITED
STATES OF AMERICA,
Defendants-Appellees,                                    No. 95-1667

and

LARRY FILLIAN, Director, Resources
Management; RONALD PETRIE,
Director, NVESD-AOD; STEVEN L.
HOLT,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-797-A)

Submitted: November 21, 1995

Decided: August 7, 1996

Before WILKINSON, Chief Judge, and HALL and NIEMEYER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Darrell M. Allen, Fairfax, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Jeri Kaylene Somers, Assistant United States Attorney, Alexandria, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Chen K. Hsu appeals the district court's order entering judgment as a matter of law for Appellees. Finding no reversible error, we affirm.

Hsu brought this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-16 (West 1994), alleging that Army employees retaliated against her for filing a formal Equal Employment Opportunity (EEO) complaint alleging sexual harassment and discrimination. Hsu's complaint sought damages against three Army employees in their individual capacities under 42 U.S.C.A. §§ 1985, 1986 (West 1994) and included a state law claim of intentional infliction of emotional distress. The United States Attorney certified that the individual employees were acting within the scope of their employment. Thus, the district court ordered that the United States be substituted as defendant in place of the individual defendants.

Following dismissal of several claims, Hsu presented her evidence to a jury in federal court in January 1995. At the close of Hsu's evidence, the Secretary moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). After oral argument, the district court granted the motion. Hsu timely appealed.

Hsu began work as an electronics engineer at the Army's Center for Night Vision and Electro-Optics ("NVESD") in Fort Belvoir, Vir-

2

ginia, in 1989. In August or September 1992, Steve Holt, Hsu's immediate supervisor, expressed concerns to Larry Fillian about Hsu's performance on certain projects. Fillian is Holt's supervisor and Hsu's second-level supervisor. Fillian met with Hsu to discuss the performance issues in September 1992.

Holt detailed examples of Hsu's inappropriate office behavior in a memorandum to Fillian in November 1992. Holt explained that Hsu's behavior had become progressively disruptive to the work environment despite several counseling sessions. For example, Hsu complained that people were spying on her and announced that she was responsible for breaking up a conspiracy within the team to overthrow Holt. Holt also described complaints he received from Hsu's co-workers about the effect Hsu was having on the work environment. Fillian did not immediately take action on the memorandum.

Hsu approached Fillian in November 1992 and complained that she believed that she was being sexually harassed by Holt. Fillian asked her to specify her charges in writing so that he could conduct a proper investigation. Hsu gave Fillian an eighteen-page typewritten memorandum detailing her allegations against Holt on December 4, 1992. However, the memorandum focused primarily on Hsu's viewpoint of Holt's character and management practices. The memorandum failed to offer any specific details about the incidents that Hsu considered to be sexual harassment. Fillian asked Hsu to provide more specific details, including times, dates, names, and particulars of the alleged harassment.

Before Fillian received Hsu's next memorandum, Fillian received complaints from Hsu's co-workers regarding Hsu's unusual, threatening behavior. The co-workers reported that Hsu had made threatening comments and expressed their concern for their safety. Hsu also threatened Holt when he inquired about a work assignment. Holt also advised Fillian that several of Hsu's co-workers had informed him about Hsu's bizarre behavior and their concern about their safety.

Fillian then received Hsu's second memorandum on February 8, 1993. Hsu provided more detailed descriptions of the events that she considered to constitute sexual harassment. Fillian investigated the allegations. Fillian met with every team member on Hsu's team, as

3

well as other employees who worked on the same floor as Hsu. Fillian asked specific questions related to the allegations, and received both verbal and written responses from the employees. Fillian also held meetings with the entire staff.

Fillian found no evidence to support Hsu's harassment claims. Rather, he found evidence of Hsu's threatening and disruptive behavior, including statements from employees who were not on Hsu's team, but who observed Hsu's strange behavior. Fillian also noticed a significant decrease in the team's productivity during this time period.

Fillian prepared a memorandum dated February 16, 1993, setting forth his findings and conclusions, and presented the memorandum to Hsu. Fillian explained that Hsu could file a formal complaint through the EEO process, and encouraged her to file a complaint if she wished to pursue her claims. Fillian also sent a memorandum to the Director of the Administration Operations Division regarding Hsu. That memorandum recounted Hsu's threatening remarks to her supervisor and other team members during the preceding months. Fillian detailed Hsu's formal written sexual harassment charges submitted to Fillian and through the formal EEO process. Fillian set forth his intent to take punitive disciplinary action against Hsu for the false and malicious statements that Hsu had attributed to her co-workers. Fillian's memorandum also requested that the Director determine whether Hsu's clearance should be suspended. After meeting with the Director, however, Fillian elected to simply move Hsu to another office on the same floor with the team.

Hsu filed a formal complaint of discrimination on February 22, 1993. Fillian gave Hsu permission to work on her EEO case during office hours, and she also received an assignment that did not require her to interact with her team members. However, Fillian soon received complaints from the team members that Hsu was repeatedly in the office and had become disruptive. Fillian described Hsu's behavior during this time as "highly agitated."

Before Fillian could take any action, the EEO conducted a hearing on May 11, 1993. In preparation for the meeting, Fillian reviewed the medical records that Hsu provided. Those records revealed that Hsu

4

was diagnosed as having hypomania in 1992 and was referred to a psychiatrist in February 1993.

Dr. Prasanna, the chief psychiatrist at the mental health clinic at Fort Belvoir, reviewed Hsu's medical records and recommended that Fillian remove Hsu from the work environment pending a mental status evaluation. Fillian recommended to Dr. Buser, the Director of NVESD, that Hsu be placed on administrative leave until Dr. Prasanna or another qualified medical person could evaluate her. Thus, after the EEO's fact-finding conference was completed, Hsu was initially placed on paid administrative leave for thirty days and her access to classified information was suspended pending an evaluation of her mental status in accordance with Army regulations. Fillian did not intend or perceive this action to be punitive.

After Hsu's access to classified information was suspended, Fillian forwarded the matter to the Central Clearance Facility ("CCF") in accordance with Army regulations. Based on Hsu's failure to attend any of the appointments scheduled for her at the Fort Belvoir mental health facility, her paid administrative leave status was extended, ultimately until March 1994, while CCF conducted a security clearance review. Dr. Buser notified Hsu in April 1994 that she was being placed on an indefinite suspension without pay pending a final determination by the CCF of the revocation of the security clearance. However, Hsu remained on paid administrative leave status until she submitted her resignation and accepted a new job with a private company in May 1994. Hsu consulted with her attorney prior to completing the resignation form. Hsu's security clearance was ultimately reinstated by CCF.

Hsu filed this complaint in June 1994. On January 23, 1995, at the close of her case in chief, the Secretary moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The district court granted the motion after oral argument.

We review de novo a district court's entry of judgment as a matter of law. Gairola v. Virginia Dep't of Gen. Servs. , 753 F.2d 1281, 1285 (4th Cir. 1985); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). We must decide, without weighing the credibility of witnesses, whether there can be but one conclusion as to the verdict that

5

reasonable jurors could have reached. Gairola , 753 F.2d at 1285. Accordingly, the question is not whether there is no evidence, but whether there is sufficient evidence upon which a jury can properly proceed to reach a verdict, although a mere scintilla of evidence is not enough to defeat a motion for directed verdict. Ralston Purina Co. v. Edmunds, 241 F.2d 164, 167 (4th Cir.), cert. denied, 353 U.S. 974 (1957).

Hsu alleged that the Defendants took action against her because she participated in activities protected by Title VII. Her claim is subject to the burdens of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To prevail on her reprisal claim, Hsu must establish a prima facie case by presenting proof giving rise to the inference that it is more likely than not that the adverse action complained of is based upon illegal criteria. Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991). Thus, to establish a prima facie case of retaliation, Hsu must show that: (1) she engaged in protected activity; (2) the Army took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. Id.

Once a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the defendant meets its burden of production, the plaintiff must then prove by a preponderance of the evidence that the employer's articulated reasons are a pretext for discrimination. Burdine, 450 U.S. at 253. And the plaintiff must show by a preponderance of the evidence that "but for" the protected activity, the adverse action would not have occurred. Dwyer v. Smith, 867 F.2d 184, 191 (4th Cir. 1989).

The district court correctly determined that Hsu failed to provide evidence to establish a prima facie case of discrimination. The Defendant did not dispute the following facts: (1) Hsu engaged in protected activity by pursuing a sexual harassment complaint against Holt; (2) Hsu was placed on administrative leave; (3) Hsu's access to classified information was suspended; and (4) Hsu was referred to a psychiatrist for evaluation. However, the Defendant offered unrebutted evidence

6

that those actions were taken based on the psychiatrist's recommendation to remove Hsu from the work place and have her examined for fitness for duty. Fillian presented uncontroverted evidence that he acted based upon his concern that Hsu presented a possible security risk. Those concerns about Hsu's odd behavior arose before Hsu began to complain of alleged sexual harassment. Thus, Hsu failed to establish a causal connection between her filing of the EEO complaint and Fillian's decision regarding her work status.

Moreover, even assuming Hsu succeeded in establishing a prima facie case of discrimination, the district court properly entered judgment as a matter of law for the Defendant for other reasons. The Defendant proffered a legitimate, non-discriminatory reason for the actions taken against Hsu. The evidence established that Fillian placed Hsu on paid administrative leave and suspended her access to classified information based upon the recommendations of Dr. Prasanna, Chief Psychiatrist at the Fort Belvoir Mental Health facility, and the legal office at Fort Belvoir. Thus, Fillian did not base his recommendation on the fact that Hsu had engaged in protected activity. In fact, Fillian encouraged Hsu to pursue her complaint through the EEO process.

Second, Hsu's assertion that Army representatives suspended her security clearance because she declined a settlement offer is simply without support. Fillian's investigation and findings relating to the sexual harassment claim were separated by several months from the time that Hsu's access to classified information was suspended. Moreover, Fillian denied taking punitive disciplinary action against Hsu based upon her harassment complaints, and Hsu presented no evidence to the contrary. Fillian testified that he took no disciplinary or punitive action against Hsu at that time. Fillian's recommendations in May 1993 to suspend Hsu's security clearance resulted from Dr. Prasanna's recommendation. The unrefuted evidence shows that retaliation played no part in the agency's decision to suspend Hsu's access to classified information and to place her on paid administrative leave.

Finally, Hsu failed to show that the Defendant's proffered reasons for the adverse action were a pretext for intentional and unlawful discrimination. Burdine, 450 U.S. at 256. Hsu must state specific facts

7

or present some objective evidence that would allow a jury to find that the articulated reason for the action is a sham intended to cover up unlawful discrimination. See Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Hsu failed to present any objective evidence from which one could reasonably conclude that the articulated bases for the agency's actions are pretext. The unrebutted evidence showed that the agency referred Hsu for a fitness-for-duty evaluation and suspended her access to classified information based upon legitimate security concerns. Hsu presented no evidence to refute the Secretary's articulated reason for his actions.

The district court correctly found that there were no controverted issues of fact upon which reasonable minds could differ. Accordingly, we affirm the district court's order entering judgment as a matter of law in favor of the Appellees. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8